T.C. Memo. 2010-125

UNITED STATES TAX COURT

BRANDON R. BALLANTYNE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 27078-08.                    Filed June 10, 2010.

<u>Robert B. Perry</u>, for petitioner.

<u>Brook R. Barrow</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

VASQUEZ, <u>Judge</u>:  Respondent determined a $4,256 deficiency in petitioner's 2007 Federal income tax.  After concessions, the issue for decision is whether Lennon Madzima (Mr. Madzima) had authority to electronically file petitioner's return for 2007.  We hold that he did.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. Petitioner resided in Texas when the petition was filed.

Until 2004 petitioner used tax preparation services, e.g., H&R Block and Liberty Tax Services, to prepare his tax returns. Petitioner always reviewed his returns and signed them before filing them with the Internal Revenue Service (IRS). In those years petitioner either received a refund check from the IRS or had the refund deposited directly into his bank account.

Petitioner met Mr. Madzima in 2003. They worked together at Capital One Auto Finance where they shared an office for 40 hours per week. As a result, petitioner and Mr. Madzima grew very close. Mr. Madzima left Capital One Auto Finance in 2004, but he and petitioner remained friends.

Mr. Madzima attended an IRS seminar on tax return preparation, purchased the requisite software, and, in 2004, started a business called Sameday Tax Services.

Petitioner wanted to help Mr. Madzima with his business. In 2005 he stopped using H&R Block to file his returns and began using Mr. Madzima. Mr. Madzima filed petitioner's tax returns for 2004, 2005, and 2006. Petitioner gave Mr. Madzima his

Form(s)[1] W-2, Wage and Tax Statement, each year for this purpose.
Each return claimed deductions and credits that petitioner was
not entitled to[2] and requested that a refund be directly
deposited into a Santa Barbara, California, bank account that did
not belong to petitioner. Petitioner did not review the returns
prepared by Mr. Madzima as he had done in the past with H&R
Block. Petitioner never received a refund directly from the IRS.
Mr. Madzima gave petitioner up to $900 dollars in cash each year
and told petitioner that was his refund amount.[3] Petitioner
never questioned Mr. Madzima about the refund amount.

In February 2008 Mr. Madzima asked petitioner whether he
wanted him to file his 2007 tax return. Petitioner said yes and
told Mr. Madzima to come by his home to pick up his 2007 Forms W-
2. Petitioner gave his 2007 Forms W-2 to Mr. Madzima because he
was certain Mr. Madzima would file his return as he had done the

---

[1] Petitioner received a Form W-2 from multiple employers in
2006 and 2007.

[2] Petitioner's 2004 tax return claimed: Dependency
exemption; head of household filing status; education credit;
earned income credit; and additional child tax credit.
Petitioner's 2005 tax return claimed: Two dependency exemptions;
head of household filing status; earned income credit; credit for
Federal tax paid on fuels; and additional child tax credit.
Petitioner's 2006 tax return claimed: Dependency exemption; head
of household filing status; and credit for Federal telephone
excise tax paid.

[3] Petitioner testified that he believed Mr. Madzima was
withholding an unknown amount from petitioner's refund as
compensation for preparing and filing petitioner's tax returns.

previous 3 years.  Petitioner testified that he called Mr. Madzima several times to find out whether the return had been filed because it was taking a long time.[4]

On April 3, 2008, Mr. Madzima electronically filed petitioner's 2007 Federal income tax return.  Petitioner did not sign or review the return.  Petitioner also did not file any other return for 2007.

The return filed by Mr. Madzima claimed deductions, filing status, and credits that petitioner concedes he is not entitled to and requested a $4,774 refund.[5]  The IRS deposited a $2,207 refund into the Santa Barbara bank account and froze the remaining $2,567.  Petitioner never received any cash from Mr. Madzima for this year.  On the basis of its adjustments to the return, the IRS determined petitioner owes a $4,256 deficiency.

The IRS began investigating Mr. Madzima's activities as early as July 2007.  Petitioner was unaware of the investigation at the time he agreed to have Mr. Madzima file his 2007 tax return.  On June 23, 2008, the Department of Justice (DOJ) filed a complaint and a motion for preliminary injunction against Mr. Madzima in the U.S. District Court for the Northern District of

---

[4]  It is unclear from the record whether petitioner was able to reach Mr. Madzima and speak to him.

[5]  Petitioner's 2007 tax return claims the following: Dependency exemption for a fictitious niece; head of household filing status; the earned income credit; an additional child tax credit; and the education credit.

Texas to enjoin Mr. Madzima from, inter alia, preparing and filing Federal tax returns for anyone other than himself.

In June 2008 petitioner was alerted by a DOJ press release to the fact that Mr. Madzima was being sued for filing fraudulent tax returns. Petitioner tried but was unable to contact Mr. Madzima to discuss his tax return after reading the press release. As a result, petitioner filed Form 3949A, Information Referral, letting the IRS know that Mr. Madzima might have violated Federal income tax laws by filing petitioner's tax returns.

OPINION

As a general rule, the Commissioner's determinations are entitled to a presumption of correctness, and the taxpayer bears the burden of proving the Commissioner's deficiency determinations incorrect. Rule 142(a); Welch v. Helvering, 290 U.S. 111, 115 (1933). Section 7491(a), however, provides that if, in any court proceeding, a taxpayer introduces credible evidence with respect to any factual issue relevant to ascertaining the liability of the taxpayer for any tax imposed by subtitle A or B, the Secretary shall have the burden of proof with respect to such issue.

Although petitioner contends that section 7491(a) applies, the burden of proof is inconsequential to the outcome of this case. Petitioner does not dispute respondent's determinations

with respect to the credits, filing status, and deductions claimed on petitioner's 2007 Federal income tax return. Petitioner argues only that he did not authorize Mr. Madzima to electronically file his 2007 Federal income tax return and therefore petitioner should not be held responsible for the resultant deficiency. The facts prove otherwise.

A taxpayer has a duty to file timely a complete and accurate return and to pay the amount shown as due on that return. See generally secs. 6001, 6011(a), 6012(a)(1), 6072(a), 6151(a).

Generally, any return required to be made under any provision of the internal revenue laws or regulations shall be signed in accordance with forms or regulations prescribed by the Secretary. Sec. 6061(a); see Selgas v. Commissioner, 475 F.3d 697, 700-701 (5th Cir. 2007) (a taxpayer's unsigned paper returns were deprived of legal effect). Section 1.6012-1(a)(5), Income Tax Regs., permits returns to be made by an agent under certain narrow circumstances with the Commissioner's permission. Whenever a return is made by an agent, it must be accompanied by a power of attorney authorizing him to represent his principal in making, executing, or filing the return. Id.

In 1998 Congress adopted the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA 1998), Pub. L. 105-206, sec. 2001, 112 Stat. 723, which provides, inter alia, that it is the policy of Congress that the IRS should implement guidelines

for electronic filing and that the IRS should achieve 80 percent electronic filing by 2007.  See H. Conf. Rept. 105-599, at 234-235 (1998), 1998-3 C.B. 747, 988-989; S. Rept. 105-174, at 39-42 (1998), 1998-3 C.B. 537, 575-578.  RRA 1998 sec. 2003(a)(2), 112 Stat. 724, amended section 6061 by adding subsection (b).  Section 6061(b)(1) provides that, in general, the Secretary shall develop procedures for the acceptance of signatures in digital or other electronic form.  Until such time as such procedures are in place, the Secretary may waive the requirement of a signature or provide for alternative methods of signing or subscribing a return.  Id.  Thus the strict requirements for the filing of a paper return by an agent do not apply with full force to electronically filed returns.

Accordingly, where it is clear that a preparer had actual authority to electronically file a return for a taxpayer, the Secretary acts within his discretion in waiving the signature requirement.

The general rule used in determining an agent's authority is set forth in 1 Restatement, Agency 2d, sec. 26 (1958), which states that "authority to do an act can be created by written or spoken words or other conduct of the principal which, reasonably

interpreted, causes the agent to believe that the principal desires him so to act on the principal's account."[6]

Petitioner purposefully gave his Forms W-2 to Mr. Madzima for 4 consecutive years, including the year in issue. He acknowledges that Mr. Madzima filed his returns for 2003 through 2006 and that he wanted Mr. Madzima to file his return again for 2007. Petitioner gave his 2007 Forms W-2 to Mr. Madzima because he "knew * * * [Mr. Madzima] would take care of it" as he had done in previous years. Petitioner did not file a different return for 2007, further demonstrating his reliance on Mr. Madzima to file. In fact, petitioner does not dispute that he wanted Mr. Madzima to file his 2007 return. He argues only that he did not authorize Mr. Madzima to make fraudulent claims on the return.

The foregoing circumstances demonstrate that Mr. Madzima had actual authority to electronically file petitioner's 2007 Federal income tax return. Petitioner cannot now, in hindsight, assert that he did not authorize Mr. Madzima to file his return. Petitioner had the duty to file a complete and accurate return and is therefore liable for the $4,256 deficiency arising from

_____

[6] This rule typically applies in cases where the agent files a petition to the Tax Court on the principal's behalf; however, the rule may apply equally to the filing of tax returns, including paper returns. See Lombardo v. Commissioner, 99 T.C. 342, 356 (1992), affd. sub nom. Davies v. Commissioner, 68 F.3d 1129 (9th Cir. 1995).

the return that was filed.  Petitioner makes much of the fact that he is a victim in this case, and we sympathize with the unfortunate position in which he finds himself.  However, petitioner not only knew who Mr. Madzima and Sameday Tax Services were but also engaged them to prepare and file his tax returns, including the return for 2007.  Petitioner is not excused from liability for the deficiency in his tax arising from the latter return.[7]

In reaching all of our holdings herein, we have considered all arguments made by the parties, and to the extent not mentioned above, we find them to be irrelevant or without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.

---

[7] Of course, a taxpayer may assert that he or she reasonably relied on a tax return preparer as a defense to certain additions to tax and/or penalties.  But respondent did not determine that petitioner is liable for any addition to tax or penalty in this case.